### JOHN WARD, EXR. V. GEORGE WARD ET AL.

**1. CONSTRUCTIVE TRUST—RIGHTS FOLLOWING PROPERTY.**

Where, upon the death of testatrix, who devised the entire use of her estate to her husband for his life with remainder to her sons, after the payment of certain legacies to other heirs, her sons divided a certain fund in the bank, then believing that it was theirs in accordance with a course of dealing with their mother by which they ran the farm and divided the proceeds thereof after paying all the family expenses, which the court, in an action against one of the sons as executor, adjudged to belong to the estate, the receiving and withholding of such money by the other son creates a constructive trust in favor of the heirs and legatees, and all property into which such money can be traced is subject to such trust, where it is not held by an innocent purchaser for value.

**2. PERSON RECEIVING WITH KNOWLEDGE NOT INNOCENT HOLDER.**

A person receiving funds under circumstances above stated, having knowledge of their origin and character, is not an innocent purchaser for value, and can be required at any time within six years of the receipt of the funds, to return the same to the executor of the estate, unless some special grounds of defense exist cutting off the right of the true owner or custodian.

**3. RULE DEFEATING RECOVERY BACK NOT REGARDED WITH FAVOR.**

The rule that money paid under a mistake of law cannot be recovered back, often operates harshly and inequitably, and is regarded with so much disfavor by the courts that it will not be extended beyond the limit heretofore defined for the scope of its operation. The tendency of the courts is to treat mistakes as to legal rights as mistakes of fact, or mistakes of mixed fact and law, whenever it is possible to do so without disturbing well settled precedents.

**4. RULE APPLIED—RECOVERY SUSTAINED.**

Where the executor of an estate and his brother, as individuals, made division of certain funds belonging to the estate under a mistaken view that it was their money, and neither one recognized the action of the executor as being done in his official capacity, or as representatives of the heirs and legatees, who were not parties to the action, it was not such a "mistake of law" as will prevent a recovery back or prevent the doing of justice between the parties in an equitable action by the executor.

**5. RULE AS TO LOSS BY TRUSTEE—CESTUI QUE TRUST.**

The rule, applicable in certain cases, that the *cestui que trust* must bear the loss occasioned by the malfeasance or the misfeasance of the trustee, or that where the property is disposed of by the trustee, he is without remedy except against the trustee or his bondsmen, is not applicable to case above stated, where the person withholding the property parted with nothing to obtain it, and has not even consciously asserted a claim adverse to the rights or interests of the *cestui que trust*.

**6. Rights of Cestui Que Trust Considered Primarily.**

An executor, or administrator under the circumstances stated, holds the property and asserts the rights *in autre droit* and courts should consider primarily the rights of the *cestui que trust*, though the rule might be otherwise if the executor or administrator were endeavoring to recover back in his own personal right.

**7 Executor Proper Party to Bring Action to Recover Back.**

An executor in his official capacity is the proper party to bring an action for the recovery of certain funds belonging to his estate in the hands of a third person.

**8. Claim Barred in Six Years—Action Accrues.**

A claim based upon the payment of money by mistake, or the wrongful appropriation and withholding of the money of another, is barred in six years after the cause of action accrued, and in the absence of concealed fraud the claim would accrue so that the money would of right be demandable immediately upon its being wrongfully obtained and withheld.

**9. Statute of Limitations Runs Against Constructive Trusts.**

Constructive trusts are subject to the statute of limitations and do not come within the excepted class of Sec. 4974, Rev. Stat., exempting " continuing and subsisting trusts " from the operation of the chapter relating to time of commencing actions.

**10. Statute Runs Against Legatees in Ohio.**

In Ohio, if the *cestui que trust* has knowledge of the transaction, and was under no disability, and his right to demand and have the funds has accrued, the statute will run against his claim. Legacies in the hands of executors, who have no duty with respect thereto except to pay the same, are not of the nature of continuing and subsisting trusts, and the statute runs in favor of the executor and against the legatee from the time the legacy becomes due and payable.

**11. Rule that Cestui Que Trust and Trustee Both Bound—Inapplicable.**

The rule that where the trustee is bound by the statute of limitations, the *cestui que trust* is also bound, is not applicable in cases where, if there were no trustee intervening, the statute would not operate against the *cestui que trust*, as, for instance, where the *cestui que trust* is a minor, or otherwise disabled from suing on his own account, or where the claim is not due so as to give him a right of action on his own account, or where the right of the *cestui que trust* is that of remainderman, and the life estate has not ended.

**12. Agreement Postponing Time When Action Accrues.**

Where the devisees and legatees under a will, devising a life estate to the husband of testatrix, with remainder in her sons after payment of certain legacies, mutually agree that the legatees shall not be paid until after the death of the father, and in accordance therewith the receipt and enjoyment of the legacies are postponed until the father's death, such postponement of the time of payment has the effect, as to all parties concerned, of postponing the beginning of the running of time under the statute of limitations until the father's death, and it is not material whether or not the agreement was based on a correct construction of the will. Therefore an action to recover money unlawfully withheld from the estate for the payment of such legacies by a party to the agreement in question cannot be defeated by a plea in bar of the statute if brought within six years of the death of the father.

**13. Same—Rights Kept Alive and Following Trust Fund.**

The right arising out of the implied promise of defendant to contribute to the payment of legacies is not barred because no action ripened thereon until after the death of his father. Therefore, if this promise is enforced by the executor on behalf of the legatees, all their rights in equity follow the trust fund and are kept alive, as concomitant or incidents of the transaction and promise.

Heard on Error.

*A. W. Eckert* and *C. W. Everett,* for plaintiff in error, cited :

Ward v. Ward.

Courts of equity do not impute laches as a rule: circumstances govern: Bank v. McIntyre, 40 O. S., 528; Treasurer v. Martin, 50 O. S., 197; [33 N. E. Rep., 1112]; Angell and Ames on Lim., Sec. 262-3, and notes; High on Inj., Sec. 87; 2 Pomeroy, Eq., Sec. 802, *et seq.*; 2 Beach on T., Sec. 671, *et seq.*; 2 Story's Eq., Sec. 1521; 13 Enc. Law, 674, sub. 2, note 5; 19 Fed. Rep., 609; 13 Enc. Law, p. 719n.; Clark v. Potter, 32 O. S., 49; Berry v. Love, 107 Ill., 612, 618, 619; Sugg v. Thresher, 30 Miss., 135, 142, 143, 144; Turner Mfg. Co. v. Stamping Co., 113 U. S., 319, 321 [4 S. Ct. Rep., 401]; Gunton v. Carroll, 101 U. S., 426, 428, 429; Dickerman v. Burgess, 20 Ill., 266, 276, 277, 278; Glenn's Admr. v. Bebbs, 17 Ind., 260, 281, 282; Johnson v. Trask, 22 N. E. Rep., 377 [116 N. Y., 136]; Stokes v. Turnpike Co., 6 Humph. (Tenn.), 241; Lyon v. Lyon, 8 Ind. (N. C.); Bollingre v. Choteau, 20 Mo., 89; Ayletts, Exr. v. King, 11 Leigh. (Va.); Obert v. Obert, 12 N. Y., Eq., 423; Morse v. Ryall, 12 Enc. Law, 540-1-4; Nudd v. Powers, 136 Mass., 273; Daggers v. Van Dyck, 37 N. J. Eq., 130; Platt v. Platt, 58 N. Y., 646; Wissler v. Craig, 80 U. S., 22; Cramer v. McSwords, 24 W. Va., 594, 601; Stahl v. Van Vleck, 53 O. S., 136, 150 [41 N. E. Rep., 35].

Trusts—Abuse of—Party can acquire no rights by: Sec. 4974, Rev. Stat.; Ib., 1080 (Limitations); 1 Beach on Trusts, Sec. 230; Newton v. Taylor, 32 O. S., 399, 407, 408, 413, 415; Hubbard v. Burritt, 41 Wis., 365; Barrett v. Bamber, 81 Pa. St., 247; Newton v. Porter, 69 N. Y., 133, 138, 140; Burks v. Burks, 7 Barb., 353; Taylor v. Mosely, 37 Miss., 544, Swinburne v. Swinburne, 29 N. Y., 569; Oliver v. Pratt, 44 U. S. (3 How.), 333, 400; McLeod v. Bank, 42 Miss., 99; Jones v. Haddock, 41 Ala., 262; Iver v. Williams, 38 Miss., 546; Smith v. Walter, 49 Mo., 250; Denn v. McKnight, 6 Holst., 385; Wigg v. Wigg, 1 Ark., 382; Wright v. Doan, 22 Pick., 55; Ryan v. Doyle, 31 Iowa, 53; Sec. 4974, Rev. Stat.; Paschall v. Hinderer, 28 O. S., 568, 569; Douglass v. Corey, 46 O. S., 349 [21 N. E. Rep., 440; 15 Am. St. Rep., 604]; Webster v. Bible Society, 50 O. S., 1 [33 N. E. Rep., 297]; Laver v. Fillder, 9 Jur. N. S., 190; 2 Story's Eq., N. S., 190; 2 Pomeroy Eq. Jur., Sec. 838, *et seq.*

Mistake of law—Equity will correct: 15 Enc. Law, 642n.; Harrell v. De Normandie, 26 Tex., 120; Fariknicht v. Myer, 8 N. Y., L. J., 167; Champion v. Layton, 6 Paige (N. Y.), 189; Mead v. Johnston, 3 Conn., 592; Lowndes v. Chisholm, 2 McCordch (S. C.), 16 Am. Dec., 667; Lawrence v. Beaubren, 2 Baily (S. C.), 23 Am. Dec., 155; Hopkins v. Mazyuk, 1 Hill (S. C.), Eq., 242, 250; Fitzgerald v. Peck, 4 Little (Ky.), 127; Cassell v. Thomas, 3 Leigh. (Va.), 113; Bowlin v. Pollock, 7 Mon. (Ky.), 26, 33; Dunn v. Clark, Cooke (Tenn.), 373, 374; Green v. Railway Co., 12 N. J. Eq., 165; Willin v. Willin, 16 Ves., 72; Stopylton v. Scott, 13 Ves., 424; Bryan v. Masterman, 4 J. J. Marsh, 225; 15 Enc. Law, 642, par. 2; State v. Paup, 13 Ark., 129 [56 Am. Dec., 303]; Koonegay v. Everett, 99 N. C., 30 [5 S. E. Rep., 418]; Gurn v. Railway Co., 12 N. Y. Eq., 165; Champlin v. Leyton, 1 Edw. (N. Y.), Ch., 467; Griffith v. Sebastian, 49 Ark., 24 [3 S. W. Rep., 886]; 15 Enc. Law, 643, n. 2; Larkins v. Biddle, 21 Ala., 252; Copton v. Martin, 11 Ala., 137; Stine v. Hall, 17 Ala., 557; Wyche v. Grant, 16 Ga., 49; Burson v. Markoe, 37 Minn., 30; Green v. Railway Co., 12 N. Y. Eq., 165; McMillan v. Railway Co., 29 N. J., 610; Wintemuite v. Snyder, 3 N. J. Eq., 489, 500; Kennard v. George, 44 N. H., 440; Huyler v. Atwood, 11 C. E. Green (N. J.), 504; Sisson v. Donnelly, 36 N. J. L., 432;

McKay v. Simpson, 6 Ired. (N. C.), 452; Stedwell v. Anderson, 21 Conn., 139; Petisch v. Hambach, 48 Wis., 443; German Am. Ins. Co. v. Davis, 131 Mass., 316; O'Donnell v. Harmon, 3 Doty, 424; Spinks v. Pittman, 51 Miss., 511; Evants v. Strode, 11 Ohio, 480; [38 Am. Dec., 744] Clayton v. Freet, 11 O. S., 440 [38 Am. Dec., 744]; Clayton v. Bussey, 30 Ga., 946 [76 Am. Dec., 680]; Underwood v. Brockman, 4 Dana (Ky.), 309 [29 Am. Dec., 407]; Freeknicht v. Meyer, 8 N. Y., 167; Clifton v. Cockburn, 21 Cent. L. J., 4; 3 M. & K., 76; State v. Fogers, 5 De. G. & M., 76; Rogers v. Ingham, 3 Ch. Div., 351; Stedwell v. Anderson, 21 Conn., 439; Farrell v. Fitch, 5 Whart. (Pa.), 325; Jenkins v. Green, 24 Kan., 493; 23 Am. Law J., 146.

Recovery back: 15 Enc. Law, 679, n. 1; Davis v. Krum, 12 Mo. App., 279; Grimes v. Blake, 16 Ind., 160; Goodspeed v. Fuller, 46 Me., 141 [710 Am. Dec., 572]; Glenn v. Shannon, 12 S. Car., 570; Newell v. Smith, 53 Conn., 72 [3 Atl., 674]; Wolf v. Beard, 123 Ill., 585 [5 N. E. Rep., 161]; Wolf v. Beard, 71 Iowa, 389 [32 N. W. Rep., 389]; W. heaton v. Olds, 20 Wend., 174; Van Santen v. Standard Oil Co., 17 Hun, 140; Lane v. Boone Co., 62 Mich., 63 [28 N. W. Rep., 786]; Buffalo v. O'Malley, 61 Wis., 255 [50 Am. Rep., 137]; Billingsten v. Ware, 32 Ala., 415; Gimbel v. Baldridge. 2 Swan (Tenn.), 295; Mauzy v. Hardy, 13 N. W. Rep., 12 [13 Neb., 36]; Rogers v. Weaver, 5 Ohio, 536.

*Ray & Cordell*, for defendant in error.

PARKER, J.:

The court below sustained a general demurrer to the third amended petition, and the plaintiff not desiring to amend, judgment was entered dismissing the petition, and to this plaintiff prosecutes error here. The petition is somewhat lengthy, but the parts we deem material can be epitomized.

Plaintiff avers that his mother, Mary Ward, died testate in 1879, seized of a certain farm of one hundred acres in this county, and certain live stock, growing crops and other property thereon. Also $1,300, deposited in a bank, to which was added shortly after her death $1,080, being the proceeds of said crops growing on the farm at the time of her death.

That by her last will she devised the farm and all property thereon to her husband, John Ward, for his lifetime, with remainder in fee to the plaintiff and his brother George, the defendant. That by her will she authorized the consumption by her husband of so much of said property as might be needful for his comfort and support, provided for the payment to other children named in the petition of bequests of money, and nominated plaintiff as executor of her will.

Plaintiff avers that because of a course of dealing on the part of his mother, his brother George and himself, extending over a series of years prior to her death, whereby he and George farmed the place and were allowed as their compensation to share all the proceeds after all expenses, including the support of the family, had been paid, he and George, in good faith, believed that this money in bank belonged to them, and that the farm and other property was to be theirs on the death of their father, subject to the burden and charge of the bequests which they believed they were bound to pay, contributing thereto equally.

Ward v. Ward.

That plaintiff and defendant therefore divided what remained of said money after the payment of certain charges and expenses, and on said division George received $1,500, most of which he invested in certain lands, described in the petition, still owned by him.

It is also averred that it was the understanding of John and George and all the legatees and heirs, that nothing was to be paid on said legacies until after the death of the father, and that all relied and acted upon this understanding. The father occupied the farm and consumed a large part of the personal estate up to the time of his death, which occurred in June, 1897. Plaintiff did not pay and was not called upon to pay anything to any heir or legatee during his father's lifetime, and neither plaintiff nor defendant supposed that the money before mentioned belonged to the estate and must be accounted for by John, as executor, until after the death of the father, when, for the first time, on the application of the heirs and legatees, plaintiff, as executor, was required by the courts of this county to file an inventory of the property which came into his hands as executor, and to include said money therein. He avers that to discharge said legacies will require about $4,800, and that the whole burden and loss will fall upon him unless the defendant shall restore the share of said money which he received as aforesaid; but that George refuses to pay anything; and he prays for such judgments, decrees and orders in the premises as may afford him the relief to which he may be entitled, and specifically that the lands bought with said trust funds may be subjected to sale for the satisfaction of this demand.

In support of the demurrer various objections to the petition are urged, but the only one that we deem worthy of much consideration is that based upon the contention that the claim is barred by the statute of limitations. We understand that the judgment of the court of common pleas was based upon this.

That the receiving and withholding of this money by George gave rise to a constructive trust in favor of the heirs and legatees, and that all property into which the funds can be traced is held by one not an innocent purchaser for value subject to the same trust, we think is true beyond doubt.

The authorities in support of this are numerous, clear and harmonious. We content ourselves with brief quotations from Pomeroy Eq. Jur. :

" Section 1047. By a well settled doctrine of equity a constructive trust arises whenever one party has obtained that which does not equitably belong to him, and which he cannot in good conscience retain from another who is beneficially entitled to it; as for instance, where money has been paid by accident, mistake of fact, or has been acquired through a breach of trust, or violation of fiduciary duty and the like.

" Section 1048. Whenever property, real or personal, which is already impressed with or subject to a trust of any kind express or by operation of law, is conveyed or transformed by a trustee not in the course of executing and carrying into effect the terms of an express trust or devolves from a trustee, to a third person who is a mere volunteer, or to a purchaser with actual or constructive notice of the trust, then the rule is universal that such heir, devisee, successor or other voluntary transferee or such purchaser with notice, acquired and hold the property subject to the same trust which before existed, and becomes himself a trustee for the original beneficiary."

"It is not necessary that such transferee or purchaser be guilty of positive fraud or should actually intend a violation of a trust obligation; it is sufficient that he acquires property upon which a trust is imposed and that he is not a *bona fide* purchaser without notice.

"This universal rule forms the protection and safeguard of the right of the beneficiaries in all kinds of trusts. It enables them to follow trust property lands, chattels, funds, or securities, and even money, as long as it can be identified in the hands of all subsequent holders, who are not in the position of *bona fide* purchasers without notice. It furnishes all those constructively equitable remedies which are so much more effective in securing the beneficiary's rights, than the mere pecuniary recoveries at law."

This money was a trust fund in the hands of the plaintiff as executor, and defendant, having knowledge of its origin, and receiving it under the circumstances related, was not in the position of an innocent purchaser for value; so that at any time within six years from the date of its receipt, he might have been required to return it to its proper custodian for the estate, unless some special grounds of defense existed cutting off the right of the true owner or custodian.

It is urged that this special ground did exist, and is disclosed in the petition where it is alleged therein that the money was divided and appropriated in consequence of a mistake on the part of both John and George, as to its ownership; that this amounted to a mistake of law, and that money thus obtained under a mistake of law cannot be recovered back, and in support of this contention we are cited to Phillips, Exr., v. McConica, Guardian, 59 Ohio St., 1 [51 N. E. Rep., 445; 69 A. S. Rep., 753]. The rule that money paid under mistake of law cannot be recovered back often operates harshly and inequitably, and is regarded with so much disfavor by the courts that it will not be extended beyond the limit heretofore defined for the scope of its operation. The tendency of the courts is to treat mistakes as to legal rights as mistakes of fact, or mistakes of mixed fact and law, wherever it is possible to do so without disturbing well-settled precedents.

The case cited was an action at law, where the court seems to have felt obliged to apply the strict rule of law. This is a suit in equity wherein it is sought to correct the mistake of the parties. There a claim against an estate for a distributive share seems to have been asserted and recognized. Here no claim was asserted against the estate or against John Ward as executor. It does not appear that either party recognized John's action as taken in his capacity as executor or trustee; but they went about the division and distribution of these funds as individuals under a mistaken view that it was their money, just as they might have each taken a horse belonging to the estate under the supposition that they owned them, without at any moment being consciously in the attitude of adverse claimants. We do not think that under such circumstances the rule of "mistake of law" is to be so applied by a court of equity as to prevent the doing of justice between the parties to the transaction, and especially not so as to prevent the recovery of the property by or on behalf of the real owners thereof who were not parties to the transaction. John Ward did not pretend to act as executor, and therefore as representative of the heirs and legatees in the premises, and George did not understand that he was dealing with John in such capacity, according to the averments of the petition, fairly construed.

Ward v. Ward.

In many cases the *cestui que trust* must bear the loss occasioned by the malfeasance or the misfeasance of the trustee, or, what amounts to the same thing, where the property is disposed of by the trustee, he is without remedy except against the trustee or his bondsmen, though they may be insolvent; but we do not think that is so in a case like this, where the person withholding the property has parted with nothing to obtain it, and has not even consciously asserted a claim adverse to the rights or interests of the *cestui que trust*.

If the executor were here asserting this claim in his own right, we might feel obliged to take a somewhat different view of his rights, but the fact that by a recovery he may be benefited we regard as merely incidental. He holds the property and asserts the rights *in autre droit*, and we are bound to consider primarily the rights of the *cestui que trust*. Woerner's Am. Law of Adm., Sec. 174.

In many instances an executor 'or other trustee may, as such, assert and enforce claims for and on behalf of the *cestui que trust* that he could not enforce on his own personal account. Even outlaws, infants and others not *sui juris*, may act as trustees and enforce the right of the *cestui que trust*, when they could not maintain a suit as individuals.

That the executor in his official capacity is the proper party plaintiff here we think is clear. Phillip's Exr. v. McConica, *supra*. Indeed it is almost certain that neither heir nor legatee could maintain the suit, at least not until after complete administration by and discharge of the executor, though they might proceed against the executor to compel him to seek to recover the property as he here seeks to recover it. Woerner A. L. Admr., Secs. 199, 200, 322 ; 60 Ala., 504, 517; Sec. 6053, Rev. Stat,

Coming now to the question of the application of the statute of limitations. As I have said, under ordinary circumstances, a claim based upon the payment of money by mistake, or the wrongful appropriation and withholding by one of the money of another, would be barred in six years after the cause of action accrued, and, in the absence of concealed fraud, it would ordinarily accrue, so that the money would be of right demandable immediately upon its being wrongfully obtained and withheld.

The plaintiff urges that the statute does not apply to this claim because it is a·" continuing and subsisting trust," within the provisions of Sec. 4974, Rev. Stat.

The authorities are uniform in holding that constructive trusts do not come within the excepted class, and are subject to the statute of limitations. We merely mention and dispose of this point in passing, and shall not trouble ourselves to cite many authorities. Wood on Limitations, Sec. 215.

It has been held that one borrowing money from a trustee, knowing it to be trust money, cannot set up the statute of limitations against a claim of or on behalf of the *cestui que trust*, though the trustee suing on his own account may be barred thereby. Lewin on Trusts, 1 Am. Ed'n, p. 1165, and cases cited in note [e]; Woerner Am. L. Admr. Sec. 331.

But in Ohio, if the *cestui que trust* had knowledge of the transaction, and was under no disability, and his right to demand and have the funds had accrued, we believe the statute would run against his claim. In this state legacies in the hands of executors, who have no duty with respect

thereto except to pay the same, are not of the nature of continuing and subsisting trusts, and the statute runs in favor of the executor and against the legatee from the time the legacy becomes due and payable. Webster v. Bible Society, 50 Ohio St., 1 [33 N. E. Rep., 297]. And see cases cited in opinion of Williams, J., at page 9.

If it should be held that the legacies in this case were due and payable on the death of the mother, notwithstanding the agreement of postponement set forth in the petition, it is apparent that the claims of the legatees would be barred under the statute. But here, according to the averments of the petition, it was agreed on the part of all interested, including plaintiff, defendant and legatees, that the legacies were not to be paid until after the death of the father. Whether this was based on a correct construction of the will we need not inquire, nor need we say whether the agreement had the effect of so modifying the rights of the parties that the executor (if a correct interpretation of the will authorized it) might not have paid, or the legatees might not have demanded and enforced payment of the legacies before the death of the father. It is sufficient that the parties agreed upon an interpretation of the will that postponed the payment of the legacies, and acted on that interpretation, and while this agreement was respected by the legatees the receipt and enjoyment of the legacies was in fact postponed until the death of the father. The result was the same as if the right to require them to wait for the event was absolute. Having regard for the agreement, their right to demand their legacies did not accrue until the death of the father had occurred. Therefore their rights of action to recover property that it might be applied in payment of their legacies did not accrue until the happening of that event, though they may have had a right at an earlier period to require the executor in the due administration of his trust to repossess himself of the property. This right against the executor, and the further right to subsequently sue the executor personally and require him to make good any loss resulting from his misfeasance, should not, and in our opinion did not affect their right to proceed through the executor to call the defendant to account for the trust funds unlawfully withheld by him. In many cases, where the trustee is bound by the statute of limitations, the *cestui que trust* is also bound. The statute operates against both at the same time and upon the same conditions. But we believe this is not true generally in cases where, if there were no trustee intervening, the statute would not operate against the *cestui que trust*, as, for instance, in certain exceptional cases where the latter is a minor, or otherwise disabled from suing on his own account, or where the claim of the *cestui que trust* is not due and payable so as to give him a right of action on his own account, or where the right of the *cestui que trust* is that of remainderman, and the life estate has not ended, and the like.

Whether the legatees in this case knew of this transaction whereby the defendant had wrongfully possessed himself of a part of the trust fund, the petition does not make clear. If they did not know of it, that would afford another good reason, in conscience if not in law, why the statute should not bar a claim prosecuted on their behalf. Whether it would afford a legal reason seems doubtful. But we believe and hold that the postponement of the time for the payment of their legacies had the effect, as to all parties concerned, of postponing the beginning of the running of time under the statute against a claim of which their right to have their legacies paid is the foundation, of the the happening until

event that made their legacies due and payable under the arrangement, *i. e.* the death of the father, and as that accrued less than six years before this suit was begun, we hold that this suit, prosecuted in their right and on their behalf, may not be defeated by a plea of the bar of the statute, unless, of course, a different state of facts from that set forth in the petition shall be made to appear. While we find no authorities directly in point, principles and cases which seem to us to be in harmony with the views here expressed will be found set forth in the edition af Lewin on Trusts, hereinbefore cited, bottom pages 1164, 1165, 1166; Hill on Trusts, Secs. 267, 403, 504, Perry on Trusts, 857, 858, 859; Wood on Limitations, Sec. 208; Crosby v. Dowd, 61 Cal., 557, 598; Scott v. Newsom, 27 Ga., 125, 131; 10 Rich. (S. C.) Eq., 226.

There is still another phase ot the case to be mentioned. The petition does not say distinctly that George promised to contribute a moiety of the funds necessary to discharge the legacies, but it states facts from which the law would raise an implication of such promise. Though this was an implied promise to John, it was a promise for the benefit of the legatees, and upon which a suit might be maintained by them or on their behalf. This suit we hold is on their behalf, as well as on behalf of all entitled to share in the estate. The fact that the promise and the enforcement thereof by John as executor may incidentally result in an advantage to him personally, we repeat, should not and can not impair the right of the legatees, or detract from the executor's authority to enforce their rights in the premises. The prayer is broad enough to warrant a personal judgment. A cause of action on this promise did not ripen until the time agreed upon for performance, *i. e.* after the death of the father; so that a cause of action on this promise is not barred. This promise, if enforced by John personally, might not justify more than a personal judgment in his favor, but when enforced by him as executor on behalf of the legatees, we are of the opinion that in connection therewith all their rights in equity to follow the trust fund may be enforced as rights arising out of the transaction and concomitant with and incidental to the receipt of their property and the promise to contribute to the payment of their legacies. A court of both law and chancery power, having all its powers invoked, will not say that the promise may be enforced by legal process, but the equities arising out of the same transaction will not be enforced, but will be regarded as barred. At the time the promise was made (implied) a right existed to follow the property which was in a measure the consideration of the promise. As a part of the cause of action (*i. e.* the legal right) is not barred, we find no warrant for holding that the incidental equity is barred.

To restate briefly our conclusions:

First. The cause of action based upon the receipt and holding of the property is not barred because the rights of the *cestui que trust* did not ripen and the statute did not begin to run against them until after the death of the father, and six years has not elapsed since then.

Second. The right arising out of the implied promise to contribute to the payment of the legacies is not barred, because no right of action ripened thereon until after the death of the father, and the equities sought to be enforced are also kept alive as concomitants or incidents of the transaction and promise.

We hold that the court of common pleas erred in sustaining the demurrer to the third amended petition and in giving judgment against the plaintiff.

The judgment will be reversed, the cause remanded with direction to the court below to overrule the demurrer and otherwise proceed in the case according to law.

---

## STREETS—PROPERTY OWNER'S RIGHTS.

[Franklin Circuit Court, September Term, 1900.]

Summers, Wilson and Sullivan, JJ.

### BEATTY V. KINNEAR.

ABUTTING OWNER'S RIGHT OF WAY IN STREET.

> The right of way and easement in a street or alley of an abutting lot owner extends at least to the first connecting or intersecting street or alley, and such lot owner may enjoin the closing or obstructing of that part of such street or alley until his damages by reason thereof have been assessed and fully paid.

HEARD ON ERROR.

*Arnold, Morton* and *Irvine*, for Kinnear, cited:

Upon the vacation of a street the title to the vacated portion reverts to the abutting lot owners : Stevens v. Shannon, 3 Circ. Dec., 386 (6 R., 142) (Affd. without report, Stephens v. Taylor, 51 Ohio St., 593) ; West v. Atcheson, 9 O. F. D., 70 (30 B., 36, 37).

Upon such vacation the duty of the public to maintain and keep in repair such vacated street ceases : McQuigg v. Cullins, 56 Ohio St., 649, 654 [47 N. E. Rep., 595] ; Crawford v. Delaware, 7 Ohio St., 459, 469 ; Jackson v. Jackson, 16 Ohio St., 163.

After vacation, while the public duty to maintain and repair ceases, there is a private right of way or easement in certain lot owners which remains: Crawford v. Delaware, 7 Ohio St., 459, 469 ; Jackson v. Jackson, 16 Ohio St., 163 ; McQuigg v. Cullins, 56 Ohio St., 649, 654 [47 N. E. Rep., 595] ; Stevens v. Shannon, 3 Circ. Dec., 386 (6 R., 142) ; Mitchell Furniture Co. v. Railroad Co., 9 Dec., 674; Elliott on Roads and Streets (2 ed.), Secs. 703 and 877, 1086.

Injury to lot owner must be different from that to general public : 24 Am. & Eng. Enc. Law, 121 ; Houck v. Wachter, 34 Md., 265 [6 Am. Rep., 332] ; Davis v. Commissioners, 26 N. E. Rep., 848 [153 Mass., 218 ; 11 L. R. A., 750] ; Quincy Canal v. Newcome, 7 Met., 283 ; Chicago v. Building Assn., 102 Ill., 379 [40 Am. Rep , 598] ; Jacksonville, T. & K. W. Ry. Co. v. Thompson, 16 So. Rep., 282 [34 Fla., 346 ; 26 L. R. A., 410] ; Littler v. City of Lincoln, 106 Ill., 353 ; City of East St. Louis v. O'Flynn, 10 N. E. Rep., 395 [119 Ill., 200 ; 59 Am. Rep., 595] ; Parker v. Catholic Bishop of Chicago, 34 N. E. Rep., 469 [146 Ill., 158] ; Shaw v. Railroad Co., 35 N. E. Rep., 92 [159 Mass., 597] ; Smith v. Boston, 7 Cush., 254 ; Bracken v. Railway Co., 11 N. W. Rep., 124 [29 Minn., 41] ; Kimball v. Homan, 42 N. W. Rep., 167 [74 Mich., 699] ; Shaubut v. Railway Co., 21 Minn., 502 ; Bailey v. Culver, 84 Mo., 531 ; Davis v. Commissioners, 26 N. E. Rep., 848 [153 Mass., 223 ; 11 L. R. A., 750] ; Heller v. Railroad Co., 28 Kas., 625 ; Doppas v. Railroad Co., 10 Circ. Dec., 286 (19 R., 582) ; Jones on Easements, Secs. 546 and 550 ; Stanwood v. City of Malden, 32 N. E. Rep., 702 [157 Mass., 17 ; 16 L. R. A.,